**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0835n.06

**No. 11-3976/13-3062**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff – Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| CHRISTOPHER UGOCHUKWU, | ) | |
| | ) | OPINION |
| Defendant Appellant. | ) | |
| | ) | |

FILED
Sep 18, 2013
DEBORAH S. HUNT, Clerk

Before: COLE, KETHLEDGE, and STRANCH, Circuit Judges.

**JANE B. STRANCH**, Circuit Judge. This case concerns a multi-kilogram heroin distribution conspiracy in Cleveland, Ohio. The grand jury indicted Christopher Ugochukwu, a Nigerian national, and twenty-three others on various drug trafficking charges. At trial, the jury convicted the defendant of drug conspiracy, possession with intent to distribute heroin, and using a telephone to facilitate a drug trafficking felony. At sentencing, the district court applied a four-level adjustment under USSG § 3B1.1(a) because the defendant was an organizer and leader of the conspiracy. The court imposed a total sentence of 320 months of imprisonment.

The defendant now appeals, contending: (1) the district court erred in denying his motion to suppress evidence seized from his apartment; (2) the evidence was insufficient to support conviction for using a telephone to facilitate a drug trafficking offense; and (3) the district court erred

-1-

in applying the adjustment for leadership role in the offense. Finding no reversible error, we AFFIRM the convictions and sentence.

## I. FACTS AND PROCEDURAL HISTORY

Criminal investigation of this drug conspiracy took place between January 2009 and July 2012. Law enforcement officers initially focused on the drug trafficking activities of Christopher Sapp, who distributed kilograms of heroin in Cleveland that were obtained from his source in Chicago. When that supply dried up, Sapp purchased heroin from Cleveland distributors, Richard Lanier and Bryant Johnson, whose drug source was the defendant. Lanier and Johnson, through their close associates, John Dukes and Eric Rosser, supplied Sapp and other distributors with kilograms of heroin obtained from the defendant.

To investigate the scope of the drug conspiracy, agents utilized various techniques, including GPS devices, surveillance, video, search warrants, and wiretaps on cell phones and landlines. Intercepted calls confirmed that the defendant supplied Lanier and Johnson with kilograms of heroin. During the calls, the defendant and Lanier discussed the quality of the heroin supplied, as well as Lanier's efforts to pay the defendant hundreds of thousands of dollars for heroin that the defendant "fronted" to him for distribution.

On May 24, 2010, agents intercepted a series of telephone calls between Lanier and the defendant that were focused on arranging a meeting the next day. On May 25, agents watched as the defendant drove to one of Lanier's residences, entered briefly, and left carrying a large bag containing $300,000 in drug proceeds. The defendant's departure from the residence was captured on a video, which was played for the jury.

Other intercepted calls revealed that Lanier had difficulty paying the defendant for heroin on another occasion because Lanier could not open the safe at one of his stash houses in Cleveland. Lanier assured the defendant that he would pay him after a locksmith opened the safe. Soon thereafter, agents watched a locksmith enter the home of Lanier's sister-in-law. In a subsequent telephone call, Lanier told John Dukes that the locksmith did not appear to observe the cash in the safe.

In late July 2012, agents conducted a series of searches and arrests to take down the drug organization. The first search occurred at one of Lanier's residences in Shaker Heights, Ohio, where agents seized heroin, currency, a money counter, a triple-beam scale, drug ledgers, and evidence of heroin processing. A search of Lanier's stash house on East 110th Street in Cleveland revealed substantial quantities of heroin and evidence of drug cutting and packaging. A search of the safe Lanier kept at his sister-in-law's house on South Lotus Avenue in Cleveland yielded $1.2 million in drug proceeds. Johnson was arrested after he took a large amount of heroin to a stash house on Elbon Street in Cleveland. A search there disclosed additional quantities of heroin, cutting agents, scales, sealing devices and packaging materials indicative of heroin processing.

After executing the initial search warrants, the agents traveled to the defendant's Cleveland apartment to arrest him on a federal warrant on July 27, 2010, around 1:50 p.m. The officers knocked and announced their presence, but no one answered the door. After hearing someone running around inside the apartment, the officers broke down the door and found the defendant in the kitchen. A protective sweep verified that the defendant was alone. During the sweep, officers observed a blender, a food sealer, and packaging materials. Based on the items found in plain view

and the evidence previously developed confirming the defendant's supplier role in the conspiracy, agents obtained a search warrant for the apartment.

During the search, agents found bags of heroin in finger form (suggesting recent arrival by body courier from overseas), currency, a money counter, a scale, a kilo press, a blender, a food sealer, cutting agents, packaging materials, and receipts for nearly $100,000 in money orders. A kilo press is used to form heroin into a solid chunk after it has been mixed with cutting agents. Officers also found on the defendant's computer a photograph depicting him inside the apartment on May 28, 2010. In the background of the photograph were many of the drug-related items the agents seized from the apartment, including the kilo press.

The district court denied without a hearing the defendant's motion to suppress the evidence seized from his apartment. Thereafter, a jury convicted the defendant of conspiracy with intent to distribute more than one kilogram of a mixture containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & 846 (count 1); possession with intent to distribute one kilogram or more of a mixture containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) (count 13); and use of a telephone to facilitate a felony drug trafficking offense, in violation of 21 U.S.C. §§ 841(a)(1), 843(b) & 846 (count 24).

The Presentence Investigation Report (PSR) recommended a base offense level of 36 based on the drug quantity and a four-level adjustment under USSG § 3B1.1(a) for the defendant's role as an organizer and leader of the heroin distribution conspiracy. The district court applied the adjustment over the defendant's objection. With a total offense level of 40 and a criminal history category of I, the advisory guideline range was 292 to 365 months. The court sentenced the defendant to 320 months of imprisonment on counts 1 and 13, and 48 months of imprisonment on

count 24, all terms to run concurrently. The defendant filed two notices of appeal: one following the sentencing hearing, and one after the district court denied the defendant's motion for a new trial. We now take up these consolidated appeals. Our jurisdiction exists under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II. ANALYSIS

The defendant challenges the district court's order denying his motion to suppress, R. 462, as well as the sufficiency of the government's proof to convict him of using a telephone to facilitate a felony drug trafficking crime. The only sentencing issue pertains to the four-level adjustment for his role in the offense. We address each issue below.

### A. Motion to suppress

The suppression issue focuses on whether the affidavit supporting the application for a warrant to search the defendant's apartment was sufficient to demonstrate the necessary probable cause to issue the warrant. According to the defendant, the affidavit did not contain sufficient information to establish the required nexus between his apartment and drug trafficking. He claims the searches of residences and stash houses belonging to Lanier and Johnson did not turn up evidence linking him to the conspiracy, and the blender, food sealer, and packaging materials observed in his apartment are commonly found in residential households. These items were not indicative of drug trafficking, he argues, because the arresting agents did not find any drug residue to suggest that the items had been used to cut and package heroin.

When reviewing the denial of a suppression motion, we uphold the factual findings of the district court unless they are clearly erroneous, and we consider legal questions *de novo*. *See United*

*States v. Stubblefield*, 682 F.3d 502, 505 (6th Cir. 2012). Where a district court denies a motion to suppress, we examine the evidence in the light most favorable to the government. *Id.*

"To find probable cause, a judge issuing a search warrant must have a substantial basis for thinking that there is a fair probability that evidence of a crime would be found at the premises." *United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013). We require "a nexus between the place to be searched and the evidence sought," which entails a showing of reasonable cause to believe that the suspected evidence is located at the property to be searched. *Id.* When deciding whether to issue a search warrant, the judge's evaluation is limited to the four corners of the affidavit. *Id.* We "give great deference to a magistrate judge's determination of probable cause," *id.* (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)), and we determine, under the totality of the circumstances, whether the issuing judge had a substantial basis to conclude that a search of the apartment would uncover evidence of criminal conduct. *See United States v. Miggins*, 302 F.3d 384, 393 (6th Cir. 2002).

The affidavit of John Dlugolinski, a member of the Northern Ohio Law Enforcement Task Force, provided more than sufficient evidence to establish probable cause to support issuance of a search warrant for the defendant's apartment. The affidavit set out at length the officer's training, knowledge, and experience related to the investigation of drug trafficking crimes, including Title III wiretap cases. The affidavit detailed the facts of the defendant's arrest at his apartment pursuant to a federal arrest warrant, and specifically identified the apartment to be searched as 12401 Larchmere Avenue, Apartment #4, Cleveland, Ohio. The affidavit listed the items the agents saw in plain view during the arrest, and tied the defendant to the drug trafficking conspiracy by reiterating the substance of an intercepted telephone conversation between Lanier and the defendant discussing

heroin supply and payment. Importantly, the affidavit incorporated by reference the Criminal Complaint and 56-page affidavit in Support of Complaint, which detailed the extensive evidence linking all of the co-conspirators, including the defendant as supplier, to the drug trafficking organization. That same affidavit supported issuance of the federal warrant for the defendant's arrest. The totality of this information was sufficient to permit the magistrate judge to draw the conclusion that the defendant held a position at the top of the drug supply chain and that evidence of drug trafficking would likely be found at his apartment. *See Miggins*, 302 F.3d at 393 94 (noting courts have repeatedly held that it is reasonable to believe drug dealers store evidence of their crimes where they reside, citing cases).

Because the search warrant for the defendant's apartment was adequately supported by probable cause, as stated in the affidavit and exhibits accompanying the warrant application, we affirm the denial of the motion to suppress. We need not reach the government's argument that the agents who executed the search warrant relied on the warrant in good faith. *See United States v. Leon*, 468 U.S. 897 (1984).

## B. Sufficiency of the evidence to support count 24

The next issue concerns the facilitation offense. Count 24 of the indictment charged that, on or about May 12, 2010 at 9:47 p.m., the defendant knowingly and intentionally used a communication facility, i.e., a telephone, to facilitate acts constituting a drug felony under 21 U.S.C. §§ 841(a)(1) and 846, in violation of 21 U.S.C. § 843(b). The indictment specified that the telephone call at issue was between Lanier and the defendant.

The proof demonstrated that the call occurred on May 12, 2010, as charged, but the time varied by twelve hours. The call took place at 9:43 a.m., rather than 9:47 p.m. During Lanier's

testimony, the prosecutor identified the call as "Session Number 432," Government Exhibit 10A-1, and played the call for the jury. Lanier identified the two voices heard on the call as his and the defendant's, and he explained that they were discussing a heroin transaction. Although the prosecutor referred to "May 10 of 2010" when questioning Lanier, a detective later testified that the call occurred on May 12, 2010, at 9:43 in the morning.

When the court instructed the jury, it stated that count 24 charged a telephone call that took place "on or about" May 12, 2010 at 9:47 p.m., as provided in the indictment. During deliberations, the jury sent out a note asking, "Does count 24 only pertain to May 12 @ 947 pm or is it associated w/ all the phone calls." During a conference with the court, the prosecutor apparently did not realize the time discrepancy between the indictment and the proof. With the agreement of both parties, the district court answered the jury, "Count 24 only pertains to May 12 @ 9:47 pm."

Thirty minutes later, the jury sent out a second note asking, "What track on the CD is from May 12th @ 947 pm. for Count 24." The prosecutor explained that she had reviewed the matter after the jury's first question and found a "typographical error" in count 24, which should have read, "May 12 at 9:43 a.m." She confirmed that the CD given to the jury did not include a call for May 12, 2010 at 9:47 p.m., because no such call existed. Defense counsel agreed the jury should be informed that no call would be found on the CD. The court remained troubled, however, that its jury instruction had specified the time as 9:47 p.m. The prosecutor pointed out the charge itself stated that the crime occurred "on or about" the date and time specified. Without objection by the parties, the court told the jury, "That call is not on the CD."

Within fifteen minutes, the jury sent out a third note: "Can we please get the call for May 12 @ 947 pm for count 24?" With the agreement of both sides, the court answered, "No." Twenty minutes later, the jury returned its guilty verdicts on all three counts.

In the motion for a new trial, the defendant argued that the time discrepancy resulted in a constructive amendment of the indictment rendering him factually innocent of the charge. The district court disagreed, reasoning that count 24 charged the offense occurred "on or about" a certain date and time, and the defendant could not show he was factually innocent of the crime charged. On appeal, the defendant changes the perspective slightly, asserting that he made a general motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 at the close of the government's case, and the court should have acquitted him on count 24 because the evidence was insufficient to convict him on the crime charged.

Reviewing this issue *de novo*, we may affirm the conviction as long as any rational jury could have found that the evidence, viewed in the light most favorable to the government, was sufficient to establish proof beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Stafford*, 721 F.3d 380, 390 (6th Cir. 2013). We do not weigh the evidence, consider witness credibility, or substitute our judgment for that of the jury. *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 588 89 (6th Cir. 1999).

To establish a violation of 21 U.S.C. § 843(b), the government was required to prove three elements beyond a reasonable doubt: "(1) a knowing or intentional (2) use of a communication facility (3) to facilitate the commission of a drug offense." *United States v. Dotson*, 871 F.2d 1318, 1321 (6th Cir. 1989). The court's jury instruction on count 24 tracked these elements, and the government proved all three.

When an indictment uses the phrase "on or about" a certain date, the government does not have to prove the exact date of the offense as long as the date is reasonably near the one specified in the indictment. *United States v. Ferguson*, 681 F.3d 826, 831 (6th Cir. 2012) (citing *United States v. Manning*, 142 F.3d 336, 339 40 (6th Cir. 1998) (proof of a meeting on August 4 was not a constructive amendment, even though the indictment specified a conspiracy "on or about" September 6 12), and *United States v. Hettinger*, 242 F. App'x 287, 295 (6th Cir. 2007) (proof that the defendant manufactured a drug on August 8 was not a constructive amendment, even though the indictment specified "on or about" August 22)). The government's proof showed that Lanier and the defendant discussed a heroin transaction by telephone on May 12, 2010, at 9:43 a.m., even though the indictment erroneously listed the time of the call as 9:47 p.m. The jury heard the call played in the courtroom and, during its deliberations, had access to the CD containing the call, Government Exhibit 10A-1.

The court's responses to the jury questions did not constitute evidence the jury could consider in deciding whether the government proved that "on or about" May 12, 2010, Lanier and the defendant used a telephone to facilitate a drug felony. After the court explained to the jury that there was not a call in evidence for May 12, 2010, at 9:47 p.m., and no such call would be sent into the jury room, the jury rationally could have determined that the precise time of the call was immaterial because time was not listed in the jury instructions as one of the three elements necessary to convict the defendant of the offense. The proof showed the call took place on May 12, 2010, as charged, and the jury reasonably could have found that the call occurred sometime during that day, fitting well within the "on or about" language of count 24 and the pertinent jury instructions. *See United States*

*v. Roberge*, 565 F.3d 1005, 1008 (6th Cir. 2009) (a date within two months of the charged date is "reasonably near" and within language charging "on or about").

This is not a case where the government proved an uncharged offense that occurred in close temporal proximity to the charged offense. *See United States v. Nance*, 481 F.3d 882, 886 n.2 (6th Cir. 2007). Nor is it a case like *United States v. Kegler*, 724 F.2d 190, 192 95 (D.C. Cir. 1983), cited by the defendant, where the district court literally amended the indictment at the government's request to correct a typographical error. Even in that case, the court held that correcting the error in the indictment did not prejudice the defendant's substantial rights and it did not result in the charging of a different offense. *Id.* at 195.

The government presented sufficient evidence to prove all three elements of the § 843(b) offense. Despite the defendant's claim that insufficient evidence existed to prove count 24, the district court did not err in denying the defendant's Rule 29 motion. We affirm the defendant's conviction on that count.

## C. Role in the offense

Finally, we consider the challenge to the four-level adjustment for role in the offense. The enhancement is permitted where "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). Application Note 2 to § 3B1.1 provides that "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." "The defendant need not have directed the activities of five or more persons; rather, five persons must have been involved in the conspiracy." *United States v. Stewart*, 306 F.3d 295, 316 n.11 (6th Cir. 2002). Application Note 4 to § 3B1.1(a) states

that factors the court may consider in "distinguishing a leadership and organizational role from one of mere management or supervision" include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Here, the defendant argues there was no evidence before the court to support any of these factors to warrant application of the four-level enhancement. He characterizes his conduct as merely fronting drugs to multiple individuals without exercising any control over the subsequent distribution of the drugs. *See*, *e.g.*, *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004); *United States v. Ward*, 37 F.3d 243, 248 (6th Cir. 1994).

Under the reasoning of *Buford v. United States*, 532 U.S. 59 (2001), we review the district court's "legal conclusion that a person is an organizer or leader under § 3B1.1" deferentially. *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013). "The trial judge is most familiar with the facts and is best situated to determine whether someone is or is not a 'leader' of a conspiracy that the jury found existed." *Id.*

Having heard the trial evidence, the district court found that the four-level adjustment applied, either because the defendant qualified as an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, § 3B1.1(a), or because an upward departure was warranted where the defendant "did not organize, lead, manage, or supervise another participant, but . . . nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." USSG § 3B1.1, comment. (n.2). The court's decision rested on findings that: (1) the defendant initiated the drug conspiracy by approaching Lanier to sell drugs;

(2) the defendant alone planned, organized, and controlled the means and price of supply; (3) the defendant directly supervised Lanier and Johnson; and (4) Lanier, Johnson, and Sapp utilized the services of more than eighteen other co-conspirators to distribute the heroin in Cleveland. The court expressly rejected the defendant's argument that his arrangement with Lanier and Johnson was simply a buyer-seller relationship.

We defer to the district court's decision because the court was in the best position, after hearing the evidence, to determine whether the defendant qualified for the four-level adjustment. *See Washington*, 715 F.3d at 983 84. In our view, the evidence fully supported the district court's determination that the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, USSG § 3B1.1(a) & comment. (n.4); or, alternatively, that an upward departure was warranted because the defendant exercised management responsibility over the property, assets, or activities of a criminal organization, USSG § 3B1.1, comment. (n.2). *See United States v. Baker*, 559 F.3d 443, 448 49 (6th Cir. 2009) (upholding four-level adjustment where defendant acted as supplier for drug trafficking organization involving more than twelve people); *United States v. Moncivais*, 492 F.3d 652, 660 62 (6th Cir. 2007) (upholding same adjustment where defendant supplied drugs and gave orders to others). Consequently, we reject this challenge to the defendant's sentence. *See United States v. Young*, 553 F.3d 1035, 1052 55 (6th Cir. 2009).

### III. CONCLUSION

The district court did not err in denying the defendant's motion to suppress or in denying the defendant's Rule 29 motion where sufficient evidence supported conviction on count 24. We will not set aside the 320-month sentence because the court properly applied a four-level adjustment for

role in the offense pursuant to USSG § 3B1.1.  Accordingly, we **AFFIRM** the convictions and sentence.