9 F.3d 110
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mike VASSAR, Defendant-Appellant.
 No. 93-5024.
 United States Court of Appeals, Sixth Circuit.
 Oct. 8, 1993.
 
 1
 Before: MARTIN and BOGGS, Circuit Judges, and JOINER, Senior District Judge.*
 
 ORDER
 
 2
 Mike Vassar appeals his convictions and sentence under Indictment No. CR 2-92-33 as well as the sentences he received pursuant to his undisputed convictions under Indictment Nos. CR 2-92-25 and CR 2-92-32. His appeal has been referred to a panel of this court pursuant to Rule 9(a), Rules of the Sixth Circuit. Upon examination, the panel unanimously agrees that oral argument is not needed in this case. Fed.R.App.P. 34(a).
 
 
 3
 The undisputed facts show that Vassar possessed a 1989 Corvette transmission with an altered serial number for intended sale. He also participated in an insurance fraud scheme with his codefendant Jennifer Wilson. Under the scheme, Wilson submitted a claim to her insurance company alleging that she had purchased the Corvette from Vassar and that the car had been stolen. In fact, the Corvette was being cut into parts for resale. The insurance company remitted the insured value of the Corvette to Wilson and Vassar, who was listed as a lienholder on the policy. In making this payment, the insurance company wired $22,656.88 from its bank in Texas to Vassar's bank in Tennessee.
 
 
 4
 Following a jury trial in No. CR 2-92-33, Vassar was convicted of seven counts of aiding and abetting, one count of possessing an automobile part with an altered identification number, one count of insurance fraud, four counts of using wire communications to perpetrate a fraud, and one count of engaging in a monetary transaction in criminally derived property valued at over $10,000. 18 U.S.C. Secs. 2, 2321, 1341, 1343 and 1957. On December 28, 1992, the district court sentenced Vassar to a $10,000 fine, an aggregate term of 71 months' imprisonment and three years' supervised release. This sentence was made concurrent to the sentences that Vassar received for distributing marijuana and using a communications facility to distribute marijuana (No. CR 2-92-25) and for altering the identification numbers on motor parts and receiving automobile parts with altered identification numbers (No. CR 2-92-32).
 
 
 5
 In the instant appeal, Vassar challenges only his convictions under Indictment No. CR 2-92-33 and the sentence that he is now serving based on all of his convictions. As discussed more fully below, Vassar's conviction under 18 U.S.C. Sec. 1957 will be reversed pursuant to the appellee's concession. However, the case will be remanded for this reason alone, as Vassar's other arguments are unavailing.
 
 
 6
 Vassar appeals his conviction of engaging in a monetary transaction in criminally derived property that had a monetary value greater than $10,000, a violation of 18 U.S.C. Sec. 1957. This conviction was based on the wire transfer that the insurance company's bank made to Vassar's bank. Vassar now argues that the transfer did not involve a transaction in "criminally derived property" because the defendants did not have possession of the funds when the transfer was made. Cf. 18 U.S.C. Sec. 1957(f)(2). A similar argument was accepted in United States v. Johnson, 971 F.2d 562, 567-70 (10th Cir.1992).
 
 
 7
 Whether or not the funds that were wired to the defendant were "criminally derived property" depends upon whether they were proceeds obtained from a criminal offense at the time the defendant engaged in the monetary transaction. We find they were not. Section 1957 appears to be drafted to proscribe certain transactions in proceeds that have already been obtained by an individual from an underlying criminal offense. The defendant did not have possession of the funds nor were they at his disposal until the investors transferred them to him. The defendant therefore cannot be said to have obtained the proceeds of the wire fraud until the funds were credited to his account.
 
 
 8
 Id. at 569-70. The appellee concedes that Vassar's Sec. 1957 conviction should be reversed because this reasoning is controlling in the instant case.
 
 
 9
 Vassar next argues that the trial court erred by allowing a prosecution witness, Roger Tooley, to testify that he had entered a witness protection program because threats had been made on his life. He contends that the probative value of the testimony was outweighed by its prejudicial impact and that there was no indication that the threats were connected to his case. Cf. Fed.R.Evid. 402 and 403. When viewed in context, Vassar's contemporaneous objection to the testimony adequately preserved this argument for appellate review. See Torres v. County of Oakland, 758 F.2d 147, 149 n. 1 (6th Cir.1985). Nevertheless, we conclude that the argument is without merit.
 
 
 10
 In reviewing this type of issue we "look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1979). The trial court did not abuse its discretion by admitting the disputed testimony because Vassar had placed Tooley's credibility at issue by eliciting testimony regarding compensation that Tooley had received from the government. See United States v. Tarantino, 846 F.2d 1384, 1407 (D.C.Cir.) (per curiam), cert. denied, 488 U.S. 840, 867 (1988). Furthermore, the jury could have believed that persons other than Vassar had made the alleged threats because Tooley had cooperated with the government in a wide-ranging investigation. See United States v. Panas, 738 F.2d 278, 285 (8th Cir.1984).
 
 
 11
 Vassar also argues that the prosecutor was allowed to mention the alleged threats in his closing argument. This claim is reviewed for plain error because Vassar did not object to the argument at trial. See United States v. Young, 470 U.S. 1, 15-16 (1985). The district court did not err by failing to restrict the prosecution's argument because the disputed remarks were responsive to Vassar's attack on Tooley's credibility. See id. at 17. Moreover, the prejudicial impact of the remarks was mitigated when the court later admonished the jury that the attorneys' arguments should not be considered as evidence. See United States v. Martinez, 981 F.2d 867, 871 (6th Cir.1992), cert. denied, 113 S.Ct. 1874 (1993).
 
 
 12
 Vassar argues that he was prejudiced when the court stated that it was not paying attention when the prosecutor objected to his counsel's closing argument. However, the court did not demonstrate a clear bias against the defense. See United States v. Smith, 928 F.2d 740, 741-42 (6th Cir.), cert. denied, 112 S.Ct. 159 (1991). The court's statement was ambiguous, in that it might have referred either to the prosecutor's objection or to the argument of Vassar's counsel. In addition, we note that the objection was overruled.
 
 
 13
 Vassar argues that the district court improperly applied a four-level enhancement under U.S.S.G. Sec. 3B1.1(a) in calculating his sentence in No. CR 2-92-32. This enhancement applies if the defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. Sec. 3B1.1(a). The presentence investigation report indicates that Vassar dismantled stolen and salvaged automobiles, altered the identification numbers on their parts and resold them. It is undisputed that David Graham was Vassar's accomplice and underling in this operation. The testimony at sentencing also indicated that at least four other individuals had stolen cars at Vassar's direction and that several other individuals had knowingly purchased altered parts from Vassar for resale. This testimony was sufficiently reliable because it was based on police reports and the witnesses' personal observations. See United States v. Silverman, 976 F.2d 1502, 1514 (6th Cir.1992) (en banc), cert. denied, 113 S.Ct. 1595 (1993). Therefore, the court's finding that there was a factual basis for applying Sec. 3B1.1(a) was not clearly erroneous. See United States v. Williams, 962 F.2d 1218, 1226 (6th Cir.), cert. denied, 113 S.Ct. 264 (1992).
 
 
 14
 Vassar argues that his offense level was improperly enhanced for obstruction of justice, under U.S.S.G. Sec. 3C1.1, because he allegedly threatened to kill Jim Simpson. Tooley's testimony indicated that Vassar believed Simpson had given the police information which incriminated Vassar. Vassar subsequently enlisted Tooley's help in learning where Simpson lived and expressly stated that he intended to kill Simpson. The district court could reasonably find that this conduct violated 18 U.S.C. Sec. 1513, which proscribes retaliatory threats against government informants. See United States v. Paradis, 802 F.2d 553, 563 (1st Cir.1986). Section 3C1.1 clearly applies when this type of violation occurs. U.S.S.G. Sec. 3C1.1, comment. (n. 3(i)). Therefore, the court's determination that a two-level increase was warranted by Vassar's threats regarding Simpson was not clearly erroneous.
 
 
 15
 Finally, Vassar argues that the district court erred by increasing his offense level by two points under U.S.S.G. Sec. 3C1.1 for suborning the perjury of Jennifer Wilson. At sentencing, Wilson recanted her testimony and admitted that she had been involved in the insurance fraud scheme with Vassar. She also stated that Vassar had contacted her and told her to "stick to the story" prior to trial. Vassar now argues that this Sec. 3C1.1 enhancement was inconsistent with the court's finding that Wilson's perjury had not resulted from duress or coercion. However, it is enough that Vassar presented the idea of committing perjury to Wilson or encouraged her to do so. See United States v. Johnson, 968 F.2d 208, 215-16 (2d Cir.1992).
 
 
 16
 Accordingly, Vassar's conviction under 18 U.S.C. Sec. 1957 is reversed, his other convictions are affirmed and the case is remanded to the district court for resentencing. Rule 9(b)(3), Rules of the Sixth Circuit.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior U.S. District Judge for the Eastern District of Michigan, sitting by designation