**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0756n.06

**No. 07-4482**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Dec 01, 2009**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,          )
                                   )      **ON APPEAL** FROM THE
          **Plaintiff-Appellee,**  )      UNITED STATES DISTRICT
                                   )      COURT FOR THE SOUTHERN
v.                                 )      DISTRICT OF OHIO
                                   )
ALVIN FENDERSON,                   )               **O P I N I O N**
                                   )
          **Defendant-Appellant.** )


**BEFORE:  NORRIS and COLE, Circuit Judges; ADAMS, District Judge.**[*]

**JOHN R. ADAMS, District Judge.**  Defendant Alvin Fenderson appeals from his sentence of 262 months incarceration.  We **VACATE**.

On April 6, 2006, a grand jury indicted Fenderson in an indictment that included nine defendants and twenty-one total counts.  On October 21, 2006, a superseding indictment was issued. In that indictment, Fenderson was charged with 1) one count of conspiracy to possess with intent to distribute more than 50 grams of cocaine base, 2) two counts of distributing cocaine base, 3) six counts of distribution of more than 5 grams of cocaine base, 4) two counts of conspiracy to possess with intent to distribute more than five kilograms of cocaine, and 5) one forfeiture count.

The matter proceeded to a jury trial on December 14, 2006.  During trial, the Government moved to dismiss one count of distribution of cocaine.  The remaining counts were submitted to the

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

jury on December 21, 2006. On that same day, the jury returned a guilty verdict on nine counts. On November 11, 2007, the district court sentenced Fenderson to 262 months incarceration on each of eight counts of the indictment and to 240 months incarceration on the remaining count, to be served concurrently. The district court entered its sentence after calculating an advisory guideline range of 210-262 months. Fenderson timely appealed and now challenges the procedural and substantive reasonableness of his sentence.

This Court reviews the district court's sentencing determination for procedural and substantive reasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Thomas*, 498 F.3d 336, 339 (6th Cir. 2007). We "first ensure that the district court committed no significant procedural error, such as ... failing to consider the § 3553(a) factors ... or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. With respect to this latter issue, the Supreme Court in *Rita v. United States*, 551 U.S. 338, 356 (2007), made clear that a district court should exercise its discretion in determining how much explanation is necessary and that "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." A district judge, therefore, need only "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.*

On appeal, Fenderson challenges numerous aspects of his sentence. The Court addresses each of Fenderson's contentions below.

1.      Relevant Conduct

A.      Cocaine base calculation

Fenderson first asserts that the district court erred when it used estimated weights to determine the amount of crack cocaine (cocaine base) that should be used to calculate his advisory guideline range.  Fenderson alleges that the evidence demonstrates that his co-conspirators routinely over-estimated the quantity of drugs being sold and that the rule of lenity should have been applied to arrive at a lower quantity.

A district court's determination related to drug-quantity is a factual finding that we review for clear error.  *United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004).  If there are no means to determine the exact amount of drugs, "an estimate will suffice, but ... a preponderance of the evidence must support the estimate."  *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990); *United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000) ("Approximations are completely appropriate.").

With respect to cocaine base, Fenderson challenges only one calculation by the district court, an estimate related to an occasion when Horatio Young was "cooking" cocaine base on behalf of Fenderson.  Trial testimony indicated that Young was cooking 2.25 ounces of powder cocaine and expected it to yield "like, three ounces" of cocaine base.  Fenderson asserts that the estimates given by his co-conspirators were routinely 23% higher than later laboratory weights.  Fenderson, therefore, concludes that the district court should have reduced the 2.25 ounces by at least 23% prior to converting the ounces into grams.  Fenderson, however, ignores that the district court's estimate was already a conservative one.  As noted, the defendants believed that cooking the 2.25 ounces

would lead to at least 3 ounces of cocaine base. Instead of using that larger number, the district court chose to use only the 2.25 ounces that were present prior to any cooking. If this Court were to apply Fenderson's proposed 23% reduction, it would appropriately apply to the 3 ounce estimate of cocaine base, not the 2.25 ounce estimate for powder cocaine. Performing that calculation would result in a finding of 2.31 ounces of cocaine base, a number larger than that used by the district court. This Court, therefore, finds no merit in Fenderson's argument regarding cocaine base.

B.      Cocaine Powder Calculation

Fenderson next argues that the district court erroneously included two kilograms of cocaine powder in its relevant conduct calculation. This Court finds no merit in Fenderson's argument.

Generally, a defendant involved in a drug conspiracy is responsible for the drug quantities for which he is directly involved and any quantity that is a reasonably foreseeable consequence of the conspiracy. *United States v. Cobbs*, 233 F. App'x 524, 544 (6th Cir. 2007) (citing *United States v. Caver*, 470 F.3d 220, 246 (6th Cir. 2006)). *See also U.S. v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002) (noting that the district court must make "particularized findings" regarding the scope of the conspiracy and the foreseeability of the conduct). Under that standard, this Court cannot find clear error as to the factual determinations in the district court's decision to include the two kilograms of cocaine powder at issue.

It is undisputed that Anthony Bell, a co-conspirator, had two kilograms of cocaine powder in his vehicle on a day when he picked up Fenderson. While Bell was driving the vehicle, Fenderson alerted him that they were being followed by the police. Bell took evasive action and tossed the two kilograms of cocaine powder from the vehicle once police were no longer in sight. Thereafter, Bell

attempted to convince Fenderson to return with him to search for the cocaine. Fenderson refused, and Bell eventually went searching for the cocaine without Fenderson. Bell's testimony makes clear that Fenderson had no actual knowledge of the drugs prior to entering the vehicle. These latter two facts are the focal point of Fenderson's argument.

Fenderson's argument ignores the fact that he need not have actual knowledge of the cocaine powder for it to be included in his relevant conduct. Rather, the appropriate question to pose is whether it was reasonably foreseeable to Fenderson that Bell would possess the drugs with an intent to distribute them. The record makes its readily apparent that it was foreseeable that Bell would possess cocaine powder with an intent to distribute. This Court, therefore, rejects Fenderson's argument.

First, Bell's testimony makes clear that he routinely purchased large quantities of drugs from Fenderson. Further, Bell sometimes purchased drugs from Fenderson's co-conspirator, Dedrick Richardson. It is also clear that on some occasions, Fenderson "fronted" drugs for Bell, not requiring him to pay the full amount at the time of purchase, but rather allowing him to pay after selling the drugs. These facts demonstrate that it was reasonably foreseeable to Fenderson that Bell would have drugs in his possession in Fenderson's presence.

Finally, while Fenderson refused to search for the drugs, he admittedly did not withdraw from the conspiracy at that point. Rather, he made a calculated decision that the risk of being arrested while searching at that time was too great. His refusal to search for the drugs, therefore, does not aid his argument. This Court finds no error in the district court's decision to include the drugs that were in Bell's possession when determining Fenderson's relevant conduct.

C.     Conversion of cocaine base and powder

Fenderson next asserts that the district court erred when it converted the mixture of cocaine base and powder using the conversion factor found in U.S.S.G. § 2D1.1(c).  Specifically, Fenderson asserts that there is "no logical, scientific, or legal justification" for the distinctions made in this conversion table.  The Court finds this argument unpersuasive.

In support of his argument, Fenderson relies upon the holding in *Kimbrough v. United States*, 552 U.S. 85 (2007).  In *Kimbrough*, the Supreme Court held "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes[.]"  *Id*. at 110. The Court went on to note that, "as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines."  *Id*. at 101 (internal quotation marks omitted).   Furthermore, this Court has recently held that a district court may vary from the Guidelines based upon a policy disagreement, beyond even the crack/powder disparity.  *See United States v. Herrera-Zuniga*, 571 F.3d 568, 583-84 (6th Cir. 2009).  Fenderson appears to argue that *Kimbrough* and its progeny should be used to abrogate in its entirety the conversion table in § 2D1.1(c).

After pronouncing sentence, the sentencing judge, as required by *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004), asked the parties whether they had "any objections to the sentence just pronounced that have not been previously raised?"  Fenderson made no argument regarding the use of the conversion table prior to this question or after it.  Accordingly, Fenderson has forfeited the argument on appeal and we review it only for plain error.

"Plain error is defined as an egregious error, one that directly leads to a miscarriage of justice." *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988). Plain error occurs when "(1) there was an error, (2) that is clear and obvious, and (3) that affects substantial legal rights" and 4) where that error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Angel*, 355 F.3d 462, 469-70 (6th Cir. 2004).

Fenderson has failed to establish that the district court committed error when it used the conversion table in § 2D1.1(c). There is no indication from the record that the district court was unaware of its authority to vary based upon a disagreement with the guidelines as they relate to cocaine base. Fenderson, therefore, can establish no error in that regard. Instead, Fenderson argues that the conversion table contains an arbitrary multiplier. Specifically, Fenderson takes issue with the fact that cocaine base is converted at different ratios depending upon the total amount of cocaine base at issue. This decision is explained by the background note to the conversion table which indicates as follows:

> The base offense levels in § 2D1.1 are either provided directly by the Anti-Drug Abuse Act of 1986 or are proportional to the levels established by statute, and apply to all unlawful trafficking. Levels 32 and 26 in the Drug Quantity Table are the distinctions provided by the Anti-Drug Abuse Act; however, further refinement of drug amounts is essential to provide a logical sentencing structure for drug offenses. To determine these finer distinctions, the Commission consulted numerous experts and practitioners, including authorities at the Drug Enforcement Administration, chemists, attorneys, probation officers, and members of the Organized Crime Drug Enforcement Task Forces, who also advocate the necessity of these distinctions. Where necessary, this scheme has been modified in response to specific congressional directives to the Commission.

U.S.S.G. § 2D1.1(c), background note. As the distinction in conversion rates was arrived at through appropriate means and reliance upon experts in the field, this Court cannot say that the district court committed plain error in utilizing the conversion rates.

D.     Leadership Role

Fenderson next challenges the district court's decision to enhance his sentence based upon a finding that he held a leadership role in the conspiracy. The Court finds no error.

We review the district court's factual findings for clear error, *United States v. Walls*, 546 F.3d 728, 735 (6th Cir. 2008), which requires "the definite and firm conviction that a mistake has been made." *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008). As for the district court's § 3B1.1 legal conclusions, this court has not settled on the appropriate standard of review. *See United States v. Young*, 553 F.3d 1035, 1052 (6th Cir. 2009) (noting "confusion within this circuit concerning the standard of review that should be applied to a district court's decision to impose a leadership enhancement under § 3B1.1."). This Court declines to resolve that confusion because even under a *de novo* review, Fenderson's challenge fails.

U.S.S.G. § 3B1.1(a) permits a four-level increase if a "defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]" An enhancement using U.S.S.G. § 3B1.1(a) involves weighing the following factors:

> [T]he exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n. 4.

In his argument, Fenderson contends that there is no evidence to suggest that he "directed the activity of four or more individuals." However, as detailed above, Fenderson need not directly supervise four individuals in order to receive the leadership enhancement. Rather, utilizing the factors set forth in the application note, this Court finds no error in the district court's conclusion.

Fenderson routinely sold drugs to Anthony Bell while "fronting" him. This meant that Bell was required to sell the drugs to their end users, then return and pay Fenderson a premium for the "fronting" that had occurred. In addition, trial testimony demonstrated that Fenderson consistently used others to "cook" the cocaine powder into cocaine base. Horatio Young cooked at Fenderson's request for the controlled buys set up by law enforcement. At one point, Fenderson also requested that Anthony Bell cook for him, but ultimately continued to use Young for that purpose. Fenderson also demonstrated his leadership role over Howard Boddie and an unknown male during a November 11, 2005 transaction. During that transaction, Fenderson handed crack to Boddie who handed the crack to an unknown male who then delivered the crack to the confidential informant. Despite this chain, the money for the sale went directly to Fenderson. Accordingly, while staying one to two steps removed from the hand-to-hand transfer, Fenderson still directly received the proceeds of that sale.

In addition, it is clear that Fenderson was the primary organizer of the criminal operation. When sales occurred, Fenderson dictated the time and location of those sales. When Fenderson's personal affairs took place, such as his need to get a haircut, the time and location of sales were altered at his orders.

Fenderson's argument on appeal revolves around the fact that Bell ignored his requests on the occasion that Bell threw the two kilograms from the moving car. Despite Fenderson's request, Bell went searching for the two kilograms. Fenderson is correct that he did not control Bell on this occasion. However, given that Bell testified that he was responsible for payment for the lost two kilograms of cocaine, it is little surprise that on this one occasion Bell put his own future safety before the orders of Fenderson. This Court, therefore, finds no merit in Fenderson's argument that the leadership enhancement was improper.

2.      Criminal History

Fenderson also challenges the district court's conclusion that his criminal history category does not over-represent his past conduct. We will not review a district court's decision not to depart downward "unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." *United States v. Puckett*, 422 F.3d 340, 345 (6th Cir. 2005) (quoting *United States v. Stewart*, 306 F.3d 295, 329 (6th Cir. 2002)). Here, the record reflects that the district court was well aware of its authority. Accordingly, this argument is without merit.

3.      Review of § 3553 Factors

Fenderson also contends that the district court's review of the § 3553(a) factors was insufficient. This Court agrees.

The Government is correct that the district court is not required to engage in a "ritual incantation" of the proper sentencing factors. *See United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005).

> Emphasizing that "[j]udicial decisions are reasoned decisions," *Rita* exhorts the sentencing judge to satisfy the procedural requirement of "set[ting] forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." The amount of reasoning required varies according to context. *Rita* indicates that when a sentencing judge concurs with the Sentencing Commission's conclusion that a within-Guidelines sentence is appropriate for a given defendant, the explanation for the sentence generally need not be lengthy. "Whe[n] the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why he has rejected those arguments."

*United States v. Liou*, 491 F.3d 334, 338 (6th Cir. 2007) (citing and quoting *Rita*, 551 U.S. at 356-57).

Upon review of the Court's precedents, *Thomas*, *supra*, most closely resembles the facts at hand. In finding Thomas's sentence procedurally unreasonable, this Court held that "the district court's only mention of Thomas's numerous arguments for a lower sentence was the statement, 'I certainly have received [the sentencing memorandum], read it and understand its presentations.'" *Thomas*, 498 F.3d at 341. This record left the Court "unsure as to whether the district court adequately considered and rejected Thomas's arguments" regarding § 3553 and its application. *Id.*

Similar to the district court in *Thomas*, this district court mentioned that it had read and considered the presentence report. However, while it recited the statutory language in § 3553(a), the Court failed to apply those factors to the facts of Fenderson's conviction in any manner. During the sentencing hearing, the district court did not describe any of the circumstances surrounding the offense, and the Court noted few, if any, of Fenderson's personal characteristics. The factors noted by the trial court included that Fenderson's father was absent for most of his life and that Fenderson has a child who suffers from epilepsy. The Court also noted that it would take into account that the

amount of drugs attributed to Fenderson was only slightly above the amount necessary to place him into a higher offense level. Each of the factors specifically identified by the trial court are properly deemed mitigating factors. The district court did not identify any specific factors that could be labeled as aggravating. Despite the recitation of these mitigating factors, Fenderson received a sentence at the top-end of the advisory guideline range.

While this Court has made clear that the district court need only demonstrate that it has considered a defendant's arguments and exercised its own discretion, the Court cannot make such a conclusion based on Fenderson's sentencing hearing. The Court's inability to review the district court's purported exercise of discretion is highlighted by examining the sentencing of Fenderson's co-defendant, Ray Howell. In sentencing Howell, the district court used nearly identical language, reciting the statutory language in § 3553(a) and stating that it had considered the statutory factors. *See United States v. Howell,* Case No. 06-4306 (consolidated with this matter for the purpose of oral argument). While Howell received a sentence near the bottom of the guideline range (90 months based upon a range of 87-108 months), Fenderson received a sentence at the top of the guideline range (262 months based upon a range of 210-262 months). By simply reciting the statutory language in each case, the district court gave no indication of the weight it applied to any of the factors, nor did it indicate the weight or lack thereof given to any of Fenderson's arguments or particular facts.

There is no question that the district court demonstrated its knowledge of the § 3553(a) factors. Further, the court explicitly stated that it had considered those factors when imposing sentence. However, rote recitation of the statutory language does not provide this Court the ability

to review the trial court's exercise of its discretion.  If trial courts were permitted to simply recite the statutory language in § 3553(a), any substantive reasonableness review would effectively be precluded.  *See United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2007) (noting that substantive reasonableness requires review of whether the sentence was based on impermissible factors, failed to take into consideration pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor).  Upon remand, the district court is advised that it is "entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines."  *U.S. v. Johnson*, 553 F.3d 990, 995 (6th Cir. 2009) (quoting *Spears v. United States*, --- U.S. ----, 129 S.Ct. 840, 172 L.Ed.2d 596 (2009)).  Accordingly, we **VACATE and REMAND** for resentencing that adequately explains the district court's *application* of the § 3553(a) factors to Fenderson's sentence.

**ALAN E. NORRIS, Circuit Judge, dissenting.** While I concur with much of the Majority's thorough opinion, I must dissent with respect to its decision to remand for re-sentencing based upon its conclusion that the district court failed to provide sufficient reasons for the sentence that it imposed.

At the conclusion of the sentencing hearing, the district court asked if the parties had any further objections to the sentence. For his part, defense counsel indicated that he did not. As a result, our review is for plain error, which the Majority acknowledges is "an egregious error, one that leads to a miscarriage of justice." Maj. Op. at 7 (quoting *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988)). I detect no error, let alone an egregious one.

District courts have received mixed messages with regard to precisely how much explanation is required when imposing a sentence. Obviously, meaningful appellate review for procedural and substantive reasonableness is impossible if the district court merely recites the factors outlined in 18 U.S.C. § 3553(a) without applying them to defendant's arguments. However, "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Rita v. United States*, 551 U.S. 338, 356 (2007). As the Supreme Court recognized, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." *Id.* In my view, the district court in this case gave sufficient explanation to satisfy us that it had considered defendant's arguments and had a reasoned basis for the sentence imposed.

The district court explained that it was basing its sentence on the post-*Booker* guidelines, as well as "the need for the sentence to reflect the seriousness of the offense," the deterrence value of

the sentence, and the need to avoid unwarranted sentencing disparities, which led it to apply the 2007

version of the guidelines instead of the 2005 version. When considering this last factor the court also

took into account the sentences received by the other defendants involved in the conspiracy, as well

as defendant's dominant role relative to his co-conspirators.

During the sentencing hearing, the district court identified two additional considerations it

would take into account. First, although it overruled defendant's objection to the quantity of drugs

attributed to him, it acknowledged the fact that this quantity barely put him over a threshold in the

guidelines that resulted in an offense level of 34 instead of 32. Hence, the court stated that it would

"take this argument into account when determining a sentence." Second the district court responded

in detail to defendant's contention that several factors warranted a downward departure from the

guidelines:

> [D]efendant requests the Court to consider several factors to warrant departure from
> the guidelines. The Court considered these factors according to 18 United States
> Code, 3553(a).
>
> The defendant asserts that his father was mostly absent from his life, and
> when he did have contact with him, he drank alcohol excessively and was abusive.
> Further, the defendant has custody of his son who suffers from seizures. The Court
> does not believe a departure is justified based on these factors, but I will take these
> into consideration while sentencing.

These statements came within a few minutes of sentencing, which strikes me as a far cry from the

Majority's characterization of the district court's conduct of the hearing: "the district court did not

describe any of the circumstances surrounding the offense, and the Court noted few, if any, of

Fenderson's personal characteristics." Maj. Op. at 11. To the contrary, when it pronounced

sentence, the district court stated that it had considered the "nature and circumstances of the offense

- 15 -

as well as the history and characteristics of the defendant." It also noted that it had "consider[ed] the facts of this particular case, the 3553 statutory factors and the information in the Presentence Report." In my view, the district court supplied sufficient explanation to allow for meaningful appellate review of the sentence.