NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0309n.06

No. 17-3018

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 21, 2018
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

LEE T. TURNER,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

BEFORE:    BOGGS, CLAY, and DONALD, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Lee T. Turner was convicted in federal district court of conspiracy to possess with intent to distribute at least one kilogram of a mixture or substance containing heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i), and 846, and possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). He was sentenced to 360 months' imprisonment. On appeal, Turner raises numerous challenges to his sentence. For the reasons set forth below, we **AFFIRM** the district court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

From late 2013 to late 2014, Turner played a central role in a drug conspiracy involving a dozen people. Operating out of his home in Toledo, Ohio, Turner sold large quantities of heroin to drug dealers. At times, he introduced drug users to the dealers he supplied. He also recruited accomplices, taught them to become dealers, and, with a co-conspirator's help, recorded his

customers' debts in a ledger. He had his heroin stamped, so others would know that he had supplied it.

Sometime in November 2014, Toledo police officers seized one-half kilogram of heroin from a dealer Turner was supplying. The dealer became an informant and told police about Turner's role in the conspiracy. With the informant's help, police officers set up a controlled buy from Turner for one kilogram of heroin. When Turner arrived at the agreed-upon location carrying the drugs, he was arrested. A search of Turner's residence and related locations revealed firearms, heroin, drug paraphernalia, and $45,000 in cash. Searches of Turner's cellphones revealed incriminating text messages.

In March 2016, Turner pleaded guilty to two crimes: (1) conspiracy to possess with intent to distribute at least one kilogram of a mixture or substance containing heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i), and 846; and (2) possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). The felon-in-possession charge was based on Turner's prior convictions for various crimes in Ohio and Michigan state courts.

Prior to sentencing, and while in jail, Turner called family members to ask them to collect drug debts on his behalf. He also purportedly tried to convince a fellow inmate to murder the informant who turned him in, as retribution.[1] To deflect suspicion, Turner told the inmate not to act until after Turner's sentencing and imprisonment. However, Turner's plan was thwarted when the inmate had second thoughts and contacted law enforcement.

---

[1] While Turner denies asking the inmate to murder the informant, calling the accusation "outrageous," (Def.'s Br. at 43), he has explicitly declined to challenge the district court's finding that he made such a request, (Def.'s Reply Br. at 8 ("[W]hile Appellant vehemently denies [the] outrageous claims, he has not challenged the District Court's [finding] for appellate purposes, in light of the nearly insurmountable standard for reversal.")). Consequently, for purposes of this appeal, this Court must assume that Turner did plan to have the informant murdered.

At sentencing, the parties discussed five issues: (1) whether Turner was an organizer or leader of the drug conspiracy, triggering a four-point offense-level increase under United States Sentencing Guideline § 3B1.1(a); (2) whether Turner obstructed justice by plotting against the informant, triggering a two-point offense-level increase under guideline § 3C1.1; (3) whether Turner accepted responsibility for his crimes, triggering a three-point offense-level decrease under guideline § 3E1.1; (4) whether the district court could base its sentencing decision, at least in part, on Turner's refusal to identify his heroin suppliers; and (5) whether Turner qualified as a career offender under guideline § 4B1.1, triggering an increase in his criminal history rating.

The district court resolved most of these issues in favor of the government. First, it applied the leadership enhancement, noting that Turner played a central role in the conspiracy, recruited and vetted accomplices, had assistance from an accomplice in keeping a drug ledger, and asked family members to collect his debts while he was in jail. Second, it applied the obstruction enhancement, citing Turner's plot against the informant. Third, it declined to apply a reduction for acceptance of responsibility, believing the reduction incompatible with its obstruction finding. Fourth, it initially determined that its sentencing decision could account for Turner's failure to identify his heroin suppliers. However, after the government conceded that this would likely be improper, the district court stated that it would not consider Turner's failure to cooperate. Fifth, the district court determined that Turner qualified as a career offender, citing his prior convictions for Ohio Robbery under Ohio Rev. Code § 2911.02, and Michigan Felonious Assault under M.C.L. § 750.82.

Based on these rulings, the district court determined that Turner's guidelines range was 360 months to life imprisonment. It sentenced Turner at the bottom of this range, to 360 months'

imprisonment on the drug count and 120 months' imprisonment on the firearms count, with the sentences running concurrently.

On appeal, Turner renews the claims he raised in the district court. In his opening brief, he states that the district court "clearly and unequivocally considered Appellant's failure to name his sources" when determining his sentence. (Def.'s Br. at 50.) However, after the government's brief highlighted the district court's promises not to do so, Turner modified his argument. Now, in his reply brief, Turner argues that the district court's promises were ambiguous, making it "reasonable to conclude the District Court considered Appellant's failure to cooperate." (Def.'s Reply Br. at 16.)

With regard to his career offender designation, Turner cites *United States v. Yates*, 866 F.3d 723 (6th Cir. 2017)—decided after his sentencing—which holds that Ohio Robbery is not a "crime of violence" and therefore cannot trigger the career offender provision. The government acknowledges that *Yates* is controlling. (Gov't Br. at 5–6.) Accordingly, the government concedes that Turner's career offender designation was erroneous. (*Id.*)

## DISCUSSION

### Standard of Review

We review a criminal sentence under a deferential abuse of discretion standard, for procedural and substantive reasonableness. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). A district court's "consideration of an impermissible [sentencing] factor is more properly considered a procedural, not substantive, error." *United States v. Cabrera*, 811 F.3d 801, 809 (6th Cir. 2016). "In reviewing a district court's application of the Sentencing Guidelines, this Court will 'accept the findings of fact of the district court unless they are clearly erroneous and [will] give due deference to the district court's application of the Guidelines to the facts.'" *United States*

*v. Moon*, 513 F.3d 527, 539–40 (6th Cir. 2008) (quoting *United States v. Williams*, 355 F.3d 893, 897–98 (6th Cir. 2003)). "We review a district court's legal conclusions regarding the Sentencing Guidelines *de novo*." *Id*. at 540.

**Analysis**

This case presents five issues: (1) whether Turner was an organizer or leader of the drug conspiracy; (2) whether Turner obstructed justice by plotting against the informant; (3) whether Turner accepted responsibility for his crimes; (4) whether the district court improperly based its sentencing decision, at least in part, on Turner's refusal to identify his heroin suppliers; and (5) whether Turner qualified as a career offender. We address each issue in turn.

**I.     Organizer or Leader Enhancement**

Guideline § 3B1.1(a) applies a four-point offense-level increase if the defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]" In determining whether the defendant was an "organizer or leader," the district court should consider any relevant circumstances, including

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 App. Note 4. "A district court need not find each factor in order to warrant an enhancement." *United States v. Castilla-Lugo*, 699 F.3d 454, 460 (6th Cir. 2012).

However, to qualify for the leadership enhancement, the defendant must have exerted control over at least one other participant in the criminal scheme. *See* U.S.S.G. § 3B1.1 App. Note 2. Consequently, the enhancement can be applied "where a defendant has 'exerted control over at least one individual within a criminal organization,' but not where the defendant has 'merely

exercised control over the property, assets or activities of the enterprise.'" *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004) (quoting *United States v. Gort-DiDonato*, 109 F.3d 318, 321 (6th Cir. 1997)).

The dispute in this case centers on whether Turner exerted control over at least one of his accomplices. The district court ruled that he had, noting that Turner played a central role in the conspiracy, recruited and vetted accomplices, had assistance from an accomplice in keeping a drug ledger, and, while in jail, asked relatives to collect his drug debts. Turner, by contrast, denies controlling any of his accomplices. He argues that they worked together collaboratively.

There was more than enough evidence to support the district court's decision, especially in light of the "due deference" given to the district court's application of the guidelines to the facts. *Moon*, 513 F.3d at 539–40. It is uncontested that Turner played a central role in the drug conspiracy and was critical to its success. And contrary to Turner's suggestion, there was substantial evidence that he controlled at least one of his accomplices. For example, he helped initiate the conspiracy; he put his customers on regular, weekly payment plans; he recruited and vetted accomplices; and he instructed an accomplice to update his drug ledger. In addition, an FBI agent testified at sentencing that, according to a co-conspirator, Turner sometimes told dealers what prices to set for the drugs. Taken together, these considerations are sufficient to show control. *See, e.g.*, *United States v. Sierra-Villegas*, 774 F.3d 1093, 1101 (6th Cir. 2014) (noting that a defendant's role in initiating a conspiracy is "significant" in assessing the degree of control and authority exercised over others); *United States v. Ugochukwu*, 538 F. App'x 674, 681 (6th Cir. 2013) (finding control where, among other factors, the defendant "controlled the means and price of supply" of the drugs); *United States v. Fenderson*, 354 F. App'x 236, 242 (6th Cir. 2009) (same result where accomplices were "required to sell the drugs to their end users, then return and pay

[the defendant] a premium for the 'fronting' that had occurred"); *United States v. Hopson*, 134 F. App'x 781, 796 (6th Cir. 2004) (noting that the control inquiry takes into account whether the defendant "recruited his accomplice[s]" or "exercised authority" over them); *United States v. Schultz*, 14 F.3d 1093, 1099 (6th Cir. 1994) (finding control where, among other factors, the defendant played a large role "[o]rganizing and coordinating" the drug conspiracy).

In essence, Turner asks this Court to find that his accomplices were more akin to independent contractors than employees. However, the district court rejected that argument. It found that Turner "didn't sit passively there and shrug his shoulders . . . as though somehow [his accomplices] are purely independent contractors without any obligation or responsibility to him. That's how I interpret the record." (R. 109, sentencing tr., PageID# 822.) There was ample support for that conclusion, and we will not second guess it. *See Ugochukwu*, 538 F. App'x at 682 ("We defer to the district court's decision because the court was in the best position, after hearing the evidence, to determine whether the defendant qualified for the four-level [leadership] adjustment.").

## II.     Obstruction of Justice Enhancement

Guideline § 3C1.1 applies a two-point offense-level increase for obstruction of justice. Specifically, it provides that

> [i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. The district court applied the enhancement here, citing Turner's plot against the informant.

This was error. It is undisputed that Turner was not attempting to influence the informant; he sought only retaliation. Indeed, Turner ensured that the informant would not be harmed—and would not learn of the plot against him—until after Turner's sentencing, at which point the plot could not possibly have affected the criminal proceeding. Consequently, Turner did not obstruct justice "with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," as required by the guideline. *Id*. The following excerpt from an Eighth Circuit case, *United States v. Galaviz*, is persuasive:

> As relevant here, § 3C1.1 provides that a defendant's offense level should be enhanced two levels if he "willfully . . . attempted to obstruct . . . the administration of justice with respect to . . . the sentencing of the instant offense of conviction." The district court found on a sufficient record that while in prison, after pleading guilty, Mr. Galaviz engaged in a conspiracy to murder Ubeldo Lopez–Gonzalez, who was a confidential informant in the case. The district court also found, again on a sufficient record, that Mr. Galaviz's motive for entering the conspiracy was to retaliate against Mr. Lopez for his cooperation with the government. But because Mr. Galaviz had already pleaded guilty, he could not have intended to obstruct justice "with respect to the instant offense" by plotting to kill Mr. Lopez unless he thought that Mr. Lopez was going to testify against him at sentencing, and that indeed was the government's theory in the first brief that it filed in this court. The infirmity of this position is that the record will not support a finding that Mr. Galaviz had reason to think that Mr. Lopez would be a witness against him at sentencing.

687 F.3d 1042, 1043 (8th Cir. 2012) (alterations in original). In a later case, the Eighth Circuit was more succinct: "When there is no evidence that retaliation would impede the progress of the defendant's case in any way, the enhancement pursuant to § 3C1.1 cannot be applied." *United States v. Parker*, 871 F.3d 590, 607 (8th Cir. 2017) (quotation marks, citation, and alteration omitted).

In an attempt to overcome the guideline's plain language, the government points to Application Note 4, which provides a long list of examples of covered conduct. The application

note specifically mentions threatening, intimidating, or unlawfully influencing a witness or juror; committing or suborning perjury; producing false documents during a judicial proceeding; destroying or concealing evidence; attempting to escape from custody before trial or sentencing; providing the court with false information; failing to comply with a restraining order; and other conduct. U.S.S.G. § 3C1.1 App. Note 4(A)-(H), (J). It does not mention purely retaliatory acts against witnesses. Nonetheless, the application note does state that the guideline applies to "other conduct prohibited by obstruction of justice provisions under Title 18, United States Code (e.g., 18 U.S.C. §§ 1510, 1511)[.]" § 3C1.1 App. Note 4(I). One such provision is 18 U.S.C. § 1513, which punishes anyone who "kills or attempts to kill another person with intent to retaliate against any person" for the latter individual's role in a criminal investigation or proceeding. 18 U.S.C. § 1513(a). Therefore, Application Note 4(I) would, it appears, apply the obstruction guideline to purely retaliatory acts against witnesses. This Court employed such reasoning in an unpublished case in 1993, *United States v. Vassar*, 9 F.3d 110 (table), 1993 WL 406797, at *3 (6th Cir. 1993), applying the obstruction enhancement to a retaliatory plot against an informant. Other circuits have reached similar conclusions. *See United States v. Morrison*, 218 F. App'x 933, 947 (11th Cir. 2007); *United States v. Sealed Deft. 1*, 175 F.3d 1009 (table), 1999 WL 177253, at *1 (2d Cir. 1999); *United States v. Lagasse*, 87 F.3d 18, 24 (1st Cir. 1996); *United States v. Downing*, 60 F.3d 837 (table), 1995 WL 410155, at *2 (10th Cir. 1995); *United States v. Cotts*, 14 F.3d 300, 308 (7th Cir. 1994).[2]

---

[2] Some of these cases relied on prior versions of the application note, which was substantively identical to the present version. *Compare* U.S.S.G. § 3C1.1 App. Note 3(i) (1995) (clarifying that the obstruction guideline applies to "conduct prohibited by 18 U.S.C. [§§] 1501–1516"), *with* U.S.S.G. § 3C1.1 App. Note 4(I) (1997–2017) (clarifying that the obstruction guideline applies to "other conduct prohibited by obstruction of justice provisions under Title 18, United States Code (e.g., 18 U.S.C. §§ 1510, 1511)").

However, we do not follow *Vassar*; that case, and every out-of-circuit case cited above, interpreted the pre-November 2006 version of the obstruction guideline. In that version, the guideline applied if the defendant obstructed justice "during the course of" the investigation, prosecution, or sentencing of the defendant's criminal case. U.S.S.G. § 3C1.1 (2005). Such language arguably covered conduct, like purely retaliatory acts against witnesses, that obstructs justice in a general sense. Because the guideline was ambiguous, the *Vassar* court appropriately consulted the Guidelines commentary. That commentary—specifically, Application Note 4(I)— confirmed that purely retaliatory acts against witnesses were covered.

The current version of the obstruction guideline, by contrast, contains different language. Guidelines Amendment 693, effective November 1, 2006, updated the guideline by replacing the phrase "during the course of" with the phrase "with respect to." *See* U.S.S.G. App. C Supp., Amend. 693. Consequently, the guideline now applies where the defendant willfully obstructed "the administration of justice *with respect to* the investigation, prosecution, or sentencing of the instant offense of conviction." *Id.* at § 3C1.1 (emphasis added). This language is unambiguous: it indicates that obstructing justice in a general sense no longer triggers the enhancement because the defendant must have intended to obstruct *his criminal proceeding*. *See Galaviz*, 687 F.3d at 1043 (holding that "a general retaliatory motive" is insufficient to trigger the enhancement unless there is a showing "that the plot was intended to obstruct justice on the instant offense of conviction").

Accordingly, there is a conflict between the guideline itself, which clearly indicates that it does not apply to purely retaliatory conduct against witnesses, and Application Note 4(I), which suggests that such conduct remains covered. This conflict must be resolved in favor of the guideline. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines

Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). Consequently, Turner's retaliatory plot against the informant should not have triggered the obstruction guideline.

### III. Reduction for Acceptance of Responsibility

The district court declined to apply a three-point offense-level reduction under guideline § 3E1.1 for acceptance of responsibility, believing the reduction unwarranted in light of its obstruction finding. *See* U.S.S.G. § 3E1.1 App. Note 4 ("Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."). Given our determination that the obstruction guideline should not have been applied, the district court's reasoning was erroneous. Nonetheless, the district court's conclusion was correct: Turner was not entitled to a reduction for acceptance of responsibility. Specifically, Turner continues to insist that he was not an organizer or leader of the drug-distribution enterprise, and the district court found that he arranged a murder-for-hire plot from jail. Therefore, Turner did not clearly demonstrate acceptance of responsibility. *See* U.S.S.G. § 3E1.1 App. Note 1(A)–(B) (stating that application of an acceptance of responsibility reduction depends, in part, on whether the defendant has (1) "truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or not falsely den[ied] any relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)," and has (2) "voluntarily terminat[ed] or withdraw[n] from criminal conduct or associations").

11

## IV.    Turner's Failure to Name His Heroin Suppliers

Turner argues that the district court based his sentence, at least in part, on his failure to identify his heroin suppliers.  According to Turner, this constituted a violation of his Fifth Amendment privilege against self-incrimination because he was never offered immunity in exchange for this cooperation.  Turner notes that the district court initially stated that it was "deeply troubled by [Turner's] refusal to disclose his sources" and that it would consider Turner's failure to cooperate when "determining what sentence to impose."  (R. 113, sentencing tr., PageID# 963–64.)

However, as the government points out in its opposition brief, the district court changed its mind.  Despite its initial inclination to consider Turner's failure to cooperate, the district court ultimately accepted Turner's argument that doing so would be improper.  (R. 109, sentencing tr., PageID# 857–58 ("Okay, then I will disregard that.  If it's not proper for me to take those into consideration, I will not. . . . [T]he remarks I made and the feelings I have of that regard, like other feelings I often have in other circumstances, one way or the other will play no role in my decision. And I assure you of that[.]").)  The district court then repeatedly guaranteed that it would not base Turner's sentence, in any way, on his failure to identify his heroin suppliers.  (*Id.* at 891, 893.)

In his reply brief, Turner argues that the district court's guarantees were ambiguous. Turner points out that, at one point, the district court promised not to consider "those considerations and concerns," but did not explicitly specify which considerations it was referring to.  (R. 109, sentencing tr., at PageID# 891.)  This argument fails because it is crystal clear from the context of the district judge's remarks that he was referring to the "considerations and concerns" surrounding Turner's failure to identify his heroin suppliers.  There is no other plausible

interpretation of the transcript. Indeed, Turner does not even attempt to provide an alternative reading.

## V. Career Offender Designation

Under guideline § 4B1.1(a), a defendant is deemed a career offender if, among other requirements, the defendant "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." In this case, the district court determined that Turner qualified as a career offender due to his prior convictions for Robbery under Ohio Rev. Code § 2911.02, and Felonious Assault under Mich. Comp. Laws § 750.82. The district court's analysis of Turner's Ohio Robbery conviction was based on this Court's unpublished decision in *United States v. Mansur*, 375 F. App'x 458, 463–64 (6th Cir. 2010), holding that Ohio Robbery constitutes a "crime of violence." As a result of his career offender designation, Turner's criminal history category was automatically set to VI, the highest rating. *See* U.S.S.G. § 4B1.1(b). Otherwise, it would have been at category III. (*See* R. 101, order, PageID# 675.)

While Turner's appeal was pending, this Court decided *Yates*, a published opinion overruling *Mansur*. In *Yates*, this Court held that Ohio Robbery is not a "crime of violence," and therefore cannot trigger the career offender provision. 866 F.3d 727–34. In light of *Yates*, the government concedes that Turner's career offender designation was erroneous. (Gov't Br. at 5–6.) We agree that *Yates* is controlling, and as a result, Turner's career offender designation was erroneous.

## VI. The District Court's Errors Were Harmless

As discussed above, the district court erred by applying the obstruction of justice enhancement and by applying the career offender enhancement. However, where a district court errs in its guidelines calculations, remand is appropriate only if the error affected the defendant's

guidelines range. *United States v. Gill*, 348 F.3d 147, 155 (6th Cir. 2003) ("In order to demonstrate that the trial court's error was not harmless, the defendant must show that the trial court could have found, by a preponderance of evidence, that a different guideline range was appropriate."). In the instant case, the errors did not. Without the obstruction of justice enhancement, Turner's offense level would have been 40. Without the career offender enhancement, Turner's criminal history rating would have been at least III. Accordingly, his guidelines range would have been 360 months to life imprisonment, *see* U.S.S.G. § 5A (Sentencing Table), which is the same guidelines range used by the district court at sentencing. Therefore, the district court's errors were harmless.[3]

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

---

[3] Although Turner argues that his career offender status will impact his designation within the Bureau of Prisons, that issue relates to the service of his sentence and does not entitle him to a remand. *See United States v. Wales*, 68 F. App'x 575, 587 n.11 (6th Cir. 2003) ("As for [defendant's] argument regarding BOP's consideration of his PSR, the Court does not believe that this consideration mandates that he receive a new sentencing hearing.").